v.

S.L.M. and J.D.B., a minor,
Respondents.

No. 24175.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 6, 2001.

Tom K. O'Loughlin II, O'Loughlin & McManaman, L.C., Cape Girardeau, for Appellant.

Janet K. Brown, Poplar Bluff, for Respondents.

PREWITT, Judge.

J.B.M. ("Appellant") filed a petition in the Circuit Court of Wayne County to set aside an adoption decree entered October 28, 1994 which made J.B.M. the adoptive father of J.D.B., a minor born on May 1, 1988. J.D.B. is the natural born child of S.L.M. ("Respondent").

The facts, as presented in the parties' briefs, are as follows:

J.D.B. was born May 1, 1988. His mother, S.L.M., does not know who the biological father of J.D.B. is. S.L.M. married J.B.M. in June, 1991. J.B.M. and S.L.M. signed an adoption petition on March 18, 1993, requesting that J.B.M. adopt J.D.B. The petition stated that "the natural biological father of the child is unknown" and that the natural biological father abandoned J.D.B. The court held a hearing on March 29, 1993. No service, notice, or publication of the hearing was made. On October 28, 1994, the court entered the adoption decree.

J.B.M. and S.L.M. were separated at the time the adoption decree was entered and they divorced February 8, 1997. J.B.M. filed a petition seeking a declaratory judgment that the adoption was void on July 19, 2000. He requested that the court order the adoption void, order all child support payments to cease, and enter a judgment against S.L.M. for child support that was previously paid, plus interest.

J.B.M. requested that that the court void the adoption because the putative father, who abandoned the child, was not given notice of the adoption proceedings. J.B.M. requested summary judgment, claiming in his memorandum in support thereof that the failure to give notice to the putative father deprived the putative father of due process and stripped the court of jurisdiction. In S.L.M.'s memorandum in opposition to J.B.M.'s motion for summary judgment, she claimed that J.B.M. lacked standing to raise the issue of notice to the putative father. S.L.M. then orally requested summary judgment in her favor at a hearing on J.B.M.'s motion.[1]

The court entered summary judgment for S.L.M., stating,

> Court finds that Plaintiff, [J.B.M.], was party to the proceeding had in Wayne County, JU–9–93–7, and that the Court had jurisdiction with regard to the Plaintiff, [J.B.M.], therein; that the Plaintiff, [J.B.M.], has no standing at this time to object to the adoption taken place therein.

The court dismissed J.B.M.'s petition to set aside the adoption with prejudice. This appeal followed.

Our review of an appeal from a summary judgment is *de novo* because the propriety of summary judgment is an issue of law. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We review the record in the light most favorable to the party against whom judgment was entered, but need not defer to the trial court's order granting summary judgment, "[a]s the trial court's judgment is founded on the record submitted and the law." *Id.*

J.B.M. makes one point on appeal, arguing that the trial court erred "by failing to void the adoption judgment where the constitutional flaw of absolutely no effort to notify potentially adverse parties is so essential that it deprived the adoption court of jurisdiction."

S.L.M. counters that the court had jurisdiction over J.B.M. and that he lacks standing to raise the lack of service on a third party in an attempt to contest the adoption. S.L.M. argues that any failure to serve the putative father was merely an irregularity in the proceedings, which J.B.M. is time-barred from raising under § 453.160, RSMo 1986 (now § 453.160.1, RSMo 2000). That statute requires that any irregularities be raised within one year of the date of entry of the adoption decree.

We note that J.B.M. failed to restate his point at the beginning of the section of the argument discussing that point as required by Rule 84.04(e). J.B.M.'s brief also fails to provide the court with a table of cases, statutes, and other authorities cited, with reference to the pages of the brief where they are cited, as required by Rule 84.04(a). "Strictly speaking, non-compliance with the dictates of Rule 84.04 preserves nothing for appellate review." *Stangeland v. Stangeland*, 33 S.W.3d 696, 703 (Mo.App.2000). However, because the welfare of a child is at stake, we will address J.B.M.'s point. *See id.*

J.B.M.'s point essentially raises two issues. First, his point raises the issue of whether the trial court's failure to notify the putative father of the adoption proceedings deprived the putative father of due process. Second, his point raises the issue of whether the failure to notify the putative father of the adoption proceedings rendered the adoption decree void.

---

1. Appellant does not complain of the form of Respondent's motion for summary judgment.

Regarding the first issue, we find that the father lacks standing to assert any deprivation of rights of the putative father. "Prudential principles of justiciability ... require that a party must have standing to bring an action." *State ex rel. Williams v. Mauer*, 722 S.W.2d 296, 298 (Mo.banc 1986). "Standing requires that a party have a personal stake arising from a threatened or actual injury." *Id.* We fail to find in the present case how J.B.M. was injured from the failure of the adoption court to notify the putative father of the adoption proceedings. J.B.M. requested to adopt J.D.B., and the court granted his petition. J.B.M. was not aggrieved by the court's entering of the adoption decree and lacks standing to assert any alleged injury to the putative father.

To support his argument that he has standing to challenge whether the putative father received due process of law, J.B.M. cites *In re Jones*, No. 76533, 2000 WL 1739228 (Ohio Ct.App. 8th Dist., Nov. 22, 2000), an unpublished opinion by the Ohio Court of Appeals which held that a juvenile court's failure in a case to terminate the parental rights of the mother to notify the alleged father of the proceedings was prejudicial to the mother as a finding that the child could be returned to the father could permit the mother to retain residual parental rights. Because the rights of the mother were prejudiced by the failure to provide notice to the father, the mother had standing "to challenge the termination of her parental rights as void for failure of service upon the putative father of her child." *Id.* at *4.

Unpublished decisions of the courts of other states are not persuasive authority in this court. Regardless, we find the circumstances of the mother in *Jones* distinguishable from those of Appellant in the present case, as the mother in *Jones* was prejudiced by the court's failure to notify

the putative father because it potentially affected her parental rights, where as the Appellant in the present case was not prejudiced by any supposed defect in notice to the putative father. Furthermore, even if J.B.M. had standing to raise this constitutional issue, by not raising this issue at the adoption proceedings, he failed to preserve the issue for appellate review. *See J.B.B. v. Baby Girl S.*, 611 S.W.2d 359, 361 (Mo. App.1980).

Regarding the second issue, we find that failure to notify the putative father of the adoption proceedings did not deprive the court of jurisdiction because, as we explain below, the putative father in this case was not an interested party and was not entitled to notice of the adoption. The court had personal jurisdiction over the parties to the adoption because J.B.M., S.L.M., and J.D.B. all resided in Wayne County and J.B.M. and S.L.M. filed the petition for adoption of the court, voluntarily subjecting themselves to the court's jurisdiction. That an adoption proceeding was within the subject matter jurisdiction of the court is not in dispute. The court's jurisdiction to enter the decree of adoption was not affected by any failure to notify the putative father of the proceedings.

Adoption is a proceeding in rem, as it determines the status of a child. *D.L.G. v. E.L.S.*, 774 S.W.2d 477, 484 (Mo. 1989) (Blackmar, C.J., concurring). As such, it determines the status of the child in relation to "the whole world," not just the parties to the proceeding. *See Goldberg v. Robertson*, 615 S.W.2d 59, 63 (Mo.1981); *Holt v. Burlington Northern R. Co.*, 685 S.W.2d 851, 853 (Mo.App.1984). "Although a trial court can proceed in matters affecting status ... without personal jurisdiction, an action in rem does require that there be compliance with the rules relating to service of process and proper notice." *Williams v. Williams*, 950

S.W.2d 919, 924 (Mo.App.1997). Failure to serve notice of the court proceedings to an interested party deprives the court of jurisdiction. *See id* But, failure to serve a person not entitled to notice "is a mere irregularity at best." *D.L.G.*, 774 S.W.2d at 482.

▨ "Absent proper service, any judgment rendered over a party is void." *Rodriguez v. Rodriguez*, 975 S.W.2d 485, 488 (Mo.App.1998). While time limits may be imposed for challenging defects in procedural requirements that render a judgment irregular, such as in § 453.160 RSMo, "[t]here is no specific time limit on a motion asking for relief from a void judgment." *Williams*, 950 S.W.2d at 924.

The trial court entering the adoption decree found, as alleged in J.B.M.'s and S.L.M.'s adoption petition, that the putative father of J.D.B. was unknown and had willfully abandoned the child and willfully, substantially and continuously neglected to provide J.D.B. with the necessary care, maintenance, support and protection for the six months immediately prior to the filing of the adoption petition. There is no indication in the record that any putative father, even if ascertainable to the court or the parents, had ever acknowledged the child or affirmatively asserted his paternity.

As S.L.M. argues in her brief, the putative father's abandonment of the child made his consent unnecessary. *See* § 453.040(5), RSMo 1986 (Consent of the adoption of a child not required of "[a] parent who has for a period of at least six months, for a child one year of age or older ... immediately prior to the filing of the petition, willfully abandoned the child or ... willfully, substantially, and continuously neglected to provide him with necessary care and protection.")[2]

Section 453.060.1(2), RSMo Supp.1992 requires that a writ of summons and a copy of the petition be served on a any person whose consent to the adoption is not required for one of the reasons set forth in § 453.040(4) or (5), RSMo 1986, which includes a "parent" who has abandoned or neglected his or her child, unless "the court finds that a putative father of a child has not acknowledged the child as his own by affirmatively asserting his paternity or whose identity is unknown and cannot be ascertained." § 453.060.5, RSMo Supp.1992. This provision was changed in 1995, two years after the adoption petition was filed, to require "[i]n all cases where the putative father is unknown, service ... be made by publication on 'John Doe' as provided in section 506.160, RSMo." § 453.060.5, RSMo Supp.1995.

Both § 453.015.2, RSMo 1986 and § 453.015(2), RSMo Supp.1999 in defining

---

**2.** Section 453.040, RSMo 1986 provides,

The consent of the adoption of a child is not required of:

(1) A parent whose rights with reference to the child have been terminated pursuant to law;

(2) A parent of a child who has waived the necessity of his or her consent to a future adoption of the child;

(3) A parent whose identity is unknown and cannot be ascertained;

(4) A parent who has a mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;

(5) A parent who has for a period of at least six months, for a child one year of age or older, or at least sixty days, for a child under one year of age, immediately prior to the filing of the petition for adoption, willfully abandoned the child or, for a period of at least six months immediately prior to the filing of the petition for adoption, willfully, substantially and continuously neglected. to provide him with necessary care and protection.

"parent" provide that "[t]he putative father shall have no legal relationship unless he has acknowledged the child as his own by affirmatively asserting his paternity." Thus, because § 453 .015 excludes putative fathers who have failed to acknowledge the child or affirmatively assert their own paternity from the definition of parent, section 453.060.1(2), which requires service to a "parent" who has abandoned or neglected his child, does not require service to a putative father who never acknowledged the child as his own or affirmatively asserted his paternity, regardless of any "John Doe" publication requirement in current versions of § 453.060.

This reading of the statute conforms with the United States Supreme Court's determination in *Lehr v. Robertson,* 463 U.S. 248, 265, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983), that the failure to give notice of pending adoption proceedings to a putative father who had never established a substantial relationship with the child and who did not avail himself of New York statutory procedure by mailing a postcard to the state's putative father registry to receive notice of proceedings affecting his parental rights did not violate due process or equal protection. *See also In re J.F.,* 719 S.W.2d 790, 792 (Mo.banc 1986) (citing *Lehr* and holding that statutes that deny the status of "parent" and notice to putative fathers who have not affirmatively asserted their paternity are not arbitrary).

Appellant cites *In re Loveheart,* 762 S.W.2d 32 (Mo.banc 1988), as authority for his argument that notice by publication is required. The Court in *Loveheart* found unconstitutional a provision of a termination of parental rights statute, § 211.453.3, that waived the requirement of service upon a parent whose identity was unknown and could not be ascertained or who could not be located as it deprived a mother whose identity was known but could not be located of due process. *Id.* *Loveheart* is inapplicable to the present case, as the applicable statute here, § 453.060, RSMo Supp.1992, did not extend the waiver of service for unknown and unascertainable parents to those who are known but cannot be located .[3]

Adoption affords the adoptive parents the same rights as a natural parent and it confers upon them the same responsibilities, including, in the event of divorce, the obligation to provide for the support of the child. We refuse to diminish the significance of such responsibilities by voiding upon divorce an adoption voluntarily entered into by the adoptive parent.

The judgment is affirmed.

PARRISH and RAHMEYER, JJ., concur.

---

**3.** Section 453.060.2, RSMo Supp.1992, states, "Except as provided in this section and section 453.015 it is not necessary to serve any person ... whose consent is not required under the provisions of sections 453.030 to 453.050."